# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
April 9, 2013

## STATE OF TENNESSEE v. ANTONIO GRANDBERRY

**Appeal from the Criminal Court of Shelby County**
**No. 11-00455      James M. Lammey, Jr., Judge**

---

**No. W2012-00615-CCA-R3-CD  -  Filed June 21, 2013**

---

JOHN EVERETT WILLIAMS, J., dissenting in part, concurring in part.

After review of the record in this case, I am unable to agree with majority's conclusion that the evidence is insufficient to support the conviction for especially aggravated robbery. The majority bases is conclusion upon the fact that the evidence established only mere presence at the scene on the part of the Defendant rather than an intent to participate in the ongoing crime of robbery. The majority acknowledges that the Defendant is guilty of aggravated assault. I conclude that there is no logical reasoning behind the aggravated assault except in furtherance of the robbery. When "viewing the evidence in the light most favorable to the prosecution" as is the required standard, *see Jackson*, 443 U.S. at 319, I disagree that the evidence fails to establish that the Defendant "knowingly, voluntarily and with common intent joined with the principal offender in the commission of the robbery." *See Sherman*, 266 S.W.3d at 408.

The victim's testimony establishes that he and his friends attended a party on the evening in question. While dancing at the party, the victim and others were "flashing money." The victim apparently had approximately $1000, which was later taken in the robbery. A few minutes after this "flashing" occurred, the victim testified that he saw people, although not the Defendant, with a "couple of handguns and one big long gun" and decided to leave the party.

The victim testified that he had retreated to his car and, while waiting for his friends, heard a gunshot. He saw people running and a "short dark-skinned man," armed with a handgun, opened his car door and instructed the victim to give him "everything you got." This man hit the victim with the handgun, and, at the same time, a second man entered the passenger side of the car and punched the victim. The second man searched the car for valuables before exiting, and he was not seen by the victim again. The first man took the

victim's money and cell phone and kept asking the victim for more. At this point, a third man, "a big dude," shattered the victim's car window with a baseball bat. Then, the defendant, who was identified repeatedly by the victim, walked up to within arms reach of the victim. In a matter of seconds, the defendant, armed with a raised SKS rifle fired the gun, wounding the victim in the leg. According to the victim, all these events occurred in a "bit more than thirty seconds." After the shooting, the victim saw "the big guy with the bat walking toward the dude with the gun walking back up and the short black guy walking up towards the house" where the party had occurred.

Mr. Plummer testified at trial that the Defendant had been present at the party that evening. At some point, Mr. Plummer saw the Defendant walking toward the street with a rifle. He heard and saw a shot fired in the air and someone yelled, "You know what this is." Police recovered a spent shell from a .38 caliber revolver at the scene, which was not the gun used in the victim's shooting. Shortly thereafter, the Defendant ran back inside the house, still in possession of the rifle, which he hid underneath a mattress in the house. "Duke" and "Bam," who were always with the Defendant according to Mr. Plummer, also re-entered the house. According to a statement given to police by Mr. Plummer, the two of them ran back in the house with the Defendant. A .38 caliber weapon was also found hidden underneath a mattress in the home. When police arrived, "Duke" and "Bam got into bed with Mr. Plummer's grandmother and pretended to be asleep.

In my opinion, this evidence allows a jury to draw an inference that the men were acting in concert in order to complete this robbery. The men were at the party prior to the incident, the victim was seen flashing a large amount of cash, the men were known associates of each other, the Defendant was seen walking down the street with an SKS rifle just prior to a shot being fired in the air, and the actions were carried out within roughly thirty seconds. The victim repeatedly and positively identified the Defendant as the man who possessed the rifle and shot him during the extremely short time-frame in which this crime occurred. It does not appear to be disputed that the Defendant was present with a gun at the time of this crime. The majority also concludes that the evidence establishes his presence at the scene as the shooter. His own actions of failing to render aid or stop the robbery seems to lie heavily in favor of the conclusion that he was in fact acting with the other men to ensure that it was accomplished. Moreover, the men's actions after the robbery and shooting of returning to the same home together, where two weapons were found hidden, seems to indicate a continued cooperation among them. I believe that the evidence presented clearly sets forth a jury question of whether the men were acting together in order to accomplish this robbery. I believe that to prevent the jury from drawing the inference that the men were acting in concert to complete a robbery, based upon the Defendant's presence, his shooting of the victim, and the other actions outlined above, is incorrect. I believe that the jury's conclusion in that regard should not be disturbed and would find the evidence sufficient to

support the conviction.

Additionally, the jury also heard evidence presented from police testimony that the victim initially informed them that the Defendant was the actual perpetrator not only of shooting him but also of taking his money. Officer Beasley testified that he was present with the victim when he gave a statement to police. At the time, Officer Beasley testified, the victim appeared lucid and not under the influence of medication. The victim stated that the man with the "shotgun," the Defendant, said, "give me everything you got, I know you got some more." Additionally, Officer Rosario also testified that he was present when the victim participated in the photo identification process. He also testified that the victim was lucid and did not appear to be under the influence of any medication. Officer Rosario testified that the victim told him that the Defendant shot him and took money from him.

Although this conflicts with the victim's testimony at trial, the jury was free to reject the victim's testimony and accredit the version of events he put forth shortly after the incident occurred. The evidence put forth to the jury by the police officer's testimony suggests guilt not by criminal responsibility but on his own actions. Again, it is the jury function to determine the credibility of witnesses who testify. *See Bland*, 958 S.W.2d at 659. I conclude that the evidence is sufficient to support the conviction.

Nonetheless, I am troubled that the jury was not charged with facilitation. Because the majority finds insufficient evidence to support the especially aggravated robbery conviction, it concludes that it is unnecessary to examine "the problematic issue of the trial court's failure to charge the offense of facilitation as a lesser-included offense of these robbery offenses." Having concluded otherwise with regard to the sufficiency of the evidence, I would reverse and remand the case for a new trial with instructions that facilitation be charged. I do agree with the majority's conclusions in all other aspects of its opinion.

 

 

_____
JOHN EVERETT WILLIAMS, JUDGE